1
2
3
4
5

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SHANNON Z. PETERSEN, Cal. Bar No. 211426
  spetersen@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California  92101-3598
Telephone:   619-338-6500
Facsimile:   619-234-3815

6
7
8
9
10

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
FRANK FALZETTA, Cal. Bar No. 125146
  ffalzetta@sheppardmullin.com
BRENDA A. BISSETT, Cal. Bar No. 116642
  bbissett@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:   213-620-1780
Facsimile:   213-620-1398

11
12

Attorneys for Plaintiffs LIBERTY MUTUAL
INSURANCE COMPANY and LIBERTY
SURPLUS INSURANCE CORPORATION

14

UNITED STATES DISTRICT COURT

15

SOUTHERN DISTRICT OF CALIFORNIA

17
18
19

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,
and LIBERTY SURPLUS INSURANCE
CORPORATION,
a New Hampshire corporation,

20

               Plaintiffs,

21

     v.

22
23

INDIAN HARBOR INSURANCE
COMPANY, a North Dakota corporation,
and AMERICAN CLAIMS
MANAGEMENT, INC., a California
corporation,

24

            Defendants.

Case No. **'11 CV 0624 BEN NLS**

**COMPLAINT FOR:**

**(1) DECLARATORY RELIEF (against both Defendants);**

**(2) EQUITABLE SUBROGATION (against Indian Harbor only); AND**

**(3) EQUITABLE CONTRIBUTION (against Indian Harbor only).**

COMPLAINT FOR DECLARATORY RELIEF, ETC.

1      Plaintiffs Liberty Mutual Insurance Company ("Liberty Mutual") and Liberty

2   Surplus Insurance Corporation ("Liberty Surplus") hereby complain against defendants

3   Indian Harbor Insurance Company ("Indian Harbor") and American Claims Management,

4   Inc. ("ACM"), and allege as follows:

5

6                              **JURISDICTION AND VENUE**

7

8      1.      This Court has jurisdiction over this action based upon complete

9   diversity of citizenship under 28 U.S.C. § 1332.  The amount in controversy, exclusive of

10  interest and costs, exceeds $75,000.

11

12     2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) and

13  1391(c), because (i) ACM's corporate headquarters are located in this judicial district,

14  (ii) Indian Harbor is deemed to reside in this judicial district because its contacts with this

15  district are sufficient to subject it to personal jurisdiction here, and (iii) a substantial part of

16  the events or omissions giving rise to the claim occurred in this judicial district.

17

18                                    **PARTIES**

19

20     3.      Plaintiff Liberty Mutual is a Massachusetts corporation with its

21  principal place of business in the State of Massachusetts, and at all times mentioned herein

22  was qualified to do business in California.

23

24     4.      Plaintiff Liberty Surplus is a corporation organized and existing under

25  the laws of the State of New Hampshire with its principal place of business in the State of

26  New York, and at all times mentioned herein was qualified to do business in California.

27

28

W02-WEST:1DED1\403128190.5                          COMPLAINT FOR DECLARATORY RELIEF, ETC.

5.      Defendant Indian Harbor is a North Dakota corporation with its principal place of business in the State of Connecticut.

6.      Defendant ACM is a California corporation with their principal places of business in the State of California.

## GENERAL ALLEGATIONS

**A.      ACM's Primary E&O Liability Coverage**

7.      ACM is a third party claims administrator, which administers automobile liability claims and other types of claims for insurance companies.  Beginning in 1999, Indian Harbor provided ACM with primary professional errors and omissions liability ("E&O liability") coverage for its administration of insurance claims under sequential annual policies.  Indian Harbor issued Policy No. MPP0017110 02, effective from August 28, 2006 to August 28, 2007, and with a retroactive date of August 26, 1999.  By its terms, Policy MPP0017110 02 provided $5 million in primary E&O liability coverage to ACM by reason of an act or omission committed from August 26, 1999 to the expiration of the policy period, for claims first made and reported during the policy period.

8.      Liberty Mutual and Liberty Surplus ("Plaintiffs") are informed and believe, and on that basis allege, that in August 2007, Arrowhead General Insurance Agency acquired ACM.  In conjunction with the acquisition, ACM made some changes to its E&O liability coverage.  ACM cancelled Policy No. MPP0017110 02 effective August 8, 2007, and simultaneously purchased a 60 month Extended Reporting Period to cover its "run-off" liability for pre-acquisition acts and omissions.  Policy No. MPP0017110 02 defines "Extended Reporting Period" as "[t]he period of time after the end of the policy period for reporting claims to the Company that are made against the Insured during the

1   applicable extended reporting period by reason of an act or omission, which was

2   committed prior to the end of the policy period and on or subsequent to the retroactive

3   date, and is otherwise covered by this policy."

4

5          9.      By its terms, Policy No. MPP0017110 02 provides ACM with $5

6   million in primary coverage for "damages" and "claims expenses" by reason of an act or

7   omission in the performance of "professional services," committed at any time from

8   August 28, 1999 through August 8, 2007, for a "claim" first made and reported in writing

9   to Indian Harbor between August 28, 2006 and August 8, 2012.  Plaintiffs are informed

10  and believe, and on that basis allege, that a true and correct copy of Policy No.

11  MPP0017110 02 (the "Primary Run-Off Policy") is attached hereto as Exhibit 1.

12

13         10.     Effective August 8, 2007, ACM purchased a new primary E&O

14  liability policy from Indian Harbor to cover liability for post-acquisition acts and

15  omissions, i.e., errors and omissions committed after August 8, 2007.  The first of these

16  "going forward" policies was Indian Harbor Policy No. MPP002387100, which, by its

17  terms, provided $5 million primary E&O liability coverage to ACM for "damages" and

18  "claims expenses" by reason of an act or omission in the performance of "professional

19  services" committed at any time from August 8, 2007 to October 1, 2008, for a "claim"

20  first made and reported in writing to Indian Harbor between August 8, 2007 and October 1,

21  2008.

22

23         11.     Indian Harbor renewed the "going forward" policy for the next annual

24  period.  By its terms, Indian Harbor Policy No. MPP0023871-01 provides $5 million

25  primary E&O liability coverage to ACM for "damages" and "claims expenses" by reason

26  of an act or omission in the performance of "professional services" committed at any time

27  from August 8, 2007 to October 1, 2009, for a "claim" first made and reported in writing to

28  Indian Harbor between October 1, 2008 and October 1, 2009 (the "Primary Going Forward

-4-

Policy").  Plaintiffs are informed and believe, and on that basis allege, that a true and correct copy of the Primary Going Forward Policy is attached as Exhibit 2.

12.     The Primary Run-Off Policy and the Primary Going Forward Policy both include form XLSPMPLPF 04/05, which provides under Section I. Insuring Agreements:

**A. Coverage**

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the Insured becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period**, by reason of an act or omission including personal injury in the performance of **professional services** by the **Insured** or by someone for whom the **Insured** is legally responsible, provided that:

1. Such act or omission was committed on or subsequent to the **retroactive date** specified in Item 8. in the Declarations; and

2. Prior to the inception date of this policy no **Insured** had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a **claim**.

W02-WEST:1DED1\403128190.5                                    COMPLAINT FOR DECLARATORY RELIEF, ETC.

**B. Defense**

The **Company** has the right and duty to defend any **claim** against the **Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent.  Defense counsel may be designated by the **Company** or, at the **Company's** option, but the **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

**C. Settlement**

The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy.  If the **Named Ins**ured refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this policy will be reduced to the amount of **damages** for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Company** made its recommendation, which amount will not exceed the remainder of the limit of liability specified in Section II. A., Limit of Liability – Each **Claim**.

**D. Exhaustion Of Limits**

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment

W02-WEST:1DED1\403128190.5                          COMPLAINT FOR DECLARATORY RELIEF, ETC.

of **damages** or **claim expenses** or any combination thereof, or

after the **Company** has deposited the remaining available limit

of liability into a court of competent jurisdiction or tendered

the remaining available limit of liability to the **Named Insured**

or, if applicable, to the excess insurer(s) of the **Named**

**Insured**.

13.     There is no provision in the Primary Run-Off Policy that requires that the Insured's liability be based *solely* on acts or omissions committed before August 8, 2007.  Likewise, the Primary Going Forward Policy does not require that the Insured's liability be based *solely* on acts or omissions committed on or after August 8, 2007. Moreover, neither policy contains any provision that "deems" related acts or omissions in a *single* "claim" to have occurred on the date of the earliest such related act or omission. Thus, a single "claim" based on ACM's (otherwise covered) acts or omissions in performance of "professional services" committed both before and after August 8, 2007, would be covered under both the Primary Run-Off Policy and the Primary Going Forward Policy.

B.      **ACM's Excess E&O Liability Coverage**

14.     Liberty Surplus issued Policy No. EO5N578738001 to ACM, which, by its terms, provides excess E&O liability coverage for a single day, August 7, 2007 to August 8, 2007, with the same August 26, 1999 retroactive date and 60 month Extended Reporting Period provided by the Primary Run-Off Policy.  By its terms, Liberty Surplus Policy No. EO5N578738001 provides ACM with $5 million in following form excess E&O liability coverage to the Primary Run-Off Policy, for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed at any time from August 26, 1999 to August 8, 2007, for a "claim" first made

and reported in writing to Liberty Surplus between August 7, 2007 and August 8, 2012 (the "Excess Run-Off Policy").  A true and correct copy of the Excess Run-Off Policy is attached hereto as Exhibit 3.

15.     Liberty Mutual issued Policy No. EO4N578741002 to ACM, which, by its terms, provides $5 million in following form excess E&O liability coverage to the Primary Going Forward Policy, for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed from August 8, 2007 to October 1, 2009, for a "claim" first made and reported in writing to Liberty Mutual between October 1, 2008 and October 1, 2009 (the "Excess Going Forward Policy").  A true and correct copy of the Excess Going Forward Policy is attached as Exhibit 4.

**C.     The Underlying Claim by Workmen's against ACM**

16.     On or about February 3, 2007, ACM entered into a Claims Management Agreement with Workmen's Auto Insurance Company ("Workmen's") whereby ACM agreed, among other things, to provide adjusting and claims handling services on behalf of Workmen's for its Florida auto liability claims (the "Claims Management Agreement").

17.     On December 4, 2009, Workmen's filed suit against ACM in Workmen's Auto Insurance Co. v. American Claims Management, Inc., in the Los Angeles County Superior Court, Case No. BC427388, later transferred to San Diego and now identified as San Diego County Superior Court, Case No. 37-2010-00092822-CU-BC-CTL (the "E&O Action").  The E&O Action arises out of ACM's alleged negligence in administering a personal injury claim filed by Katherine Youngblood against one of Workmen's' Florida insureds, Michael Wright.  On May 7, 2007, Wright was involved in

COMPLAINT FOR DECLARATORY RELIEF, ETC.

an auto accident in Florida, which resulted in serious injuries to Youngblood (the "Accident").

18.      In support of its claims asserted in the E&O Action, Workmen's makes the following allegations against ACM:

a.      On May 8, 2001, Wright notified ACM of the Accident under his Workmen's policy, which provided limits of $10,000 per person and $20,000 per accident for auto liability bodily injury.  ACM opened a claim file or files regarding the Accident and any claims that might arise from Ms. Youngblood's injuries (the "Youngblood Claim").

b.      Less than one week after the Accident, ACM knew that Ms. Youngblood was in a coma in a Level 1 trauma center, and that her injuries from the Accident were serious and incapacitating.

c.      By June 13, 2007, ACM was aware that the hospital treating Ms. Youngblood had filed a Claim of Lien in public records for $212,000 for the care of Ms. Youngblood arising from the Accident.

d.      By the middle of June, 2007, ACM knew Ms. Youngblood's hospital bills alone resulting from the Accident exceeded $200,000 through the middle of June of 2007.

e.      By June 20, 2007, ACM learned that the investigating law enforcement officer had concluded that Mr. Wright was the "at fault" driver in causing the Accident.

f.      On or about July 6, 2007, an ACM supervisor admonished an ACM claims handler for failing to give the claim top priority.

g.      By August 8, 2007, ACM had concluded there was no question that Mr. Wright was 100% liable for the Accident.

h.      ACM knew that Ms. Youngblood was in the hospital for a month, and was then in a rehabilitation center for two months, before being discharged to return home on August 19, 2007.

i.      Despite ACM's knowledge of the seriousness of Ms. Youngblood's injuries and that Mr. Wright was at fault, "ACM did nothing to negotiate or otherwise effectuate a settlement of the Youngblood Claim on behalf of Workmen's' insured for more than four (4) months following the accident."

19.      On September 4, 2007, the attorney representing Ms. Youngblood and her husband contacted ACM by sending a letter to ACM's Florida claims office inquiring why there had been no offers to resolve the Youngblood Claim since the Accident.

20.      On September 7, 2007, ACM's Florida claims office sent the Youngbloods' attorney a letter stating:  "It is our understanding that Katherine suffered an incapacitating injury that required hospitalization . . . Workmen's stands ready to reach a settlement with your clients—I'm requesting any type of minimal documentation, such as a hospital report or billing that confirms Katherine Youngblood suffered a serious injury."

21.      On September 7, 2007, the Youngbloods' attorney filed a personal injury lawsuit in the Circuit Court of the Eight Judicial District in and for Bradford County, Florida, styled as <u>Katherine D. Youngblood and Kevin Youngblood, individually</u>

<u>and as parents and natural guardians of Sarah Youngblood and Emily Youngblood v.</u>

<u>Michael Z. Wright</u>, Case No 04-2007-CA-431 (the "Youngblood Action").

22.     On September 18, 2007, ACM offered the Workmen's $10,000 bodily injury limits in settlement of the Youngblood Action.

23.     On September 25, 2007, the Youngbloods' attorney writes to ACM, "apparently you didn't need any further documentation to offer $10,000.  My clients reject your offer."

24.     Sometime after September 25, 2007, Workmen's took the position that any judgment against Michael Wright that may be entered in the Youngblood Action was "100% the responsibility of ACM for its alleged negligence in handling the claim." Sometime after September 25, 2007, Workmen's also notified ACM it would hold ACM responsible for any amounts it paid to settle the Youngblood Action in excess of the $10,000 policy limit because of ACM's purported mishandling of the Youngblood Claim.

25.     Plaintiffs are informed and believe, and on that basis allege that, on or about February 3, 2009, ACM's broker notified Indian Harbor under the Primary Run-Off Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim.

26.     Plaintiffs are informed and believe, and on that basis allege, that on or about February 3, 2009, ACM's broker notified Indian Harbor under the Primary Going Forward Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim.

27.     On or about February 6, 2009, ACM's broker notified Liberty Surplus under the Excess Run-Off Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim.

28.     On or about February 6, 2009, ACM's broker notified Liberty Mutual under the Excess Going Forward Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim.

29.     On or about May 8, 2009, counsel for Workmen's sent a letter to ACM which stated:  "The Plaintiff in the Underlying Suit has informally alleged that Workmen's claim handling practices were negligent and the insurer is liable for all sums in excess of the available policy limits."  The May 8, 2009 letter also stated, "ACM adjusted this claim May 2007 through 2008.  **Please provide this office with full insurance disclosures from all of ACM's insurer for the time period at issue**."  A true and correct copy of the May 8, 2009 letter is attached hereto as Exhibit 5.

30.     Plaintiffs are informed and believe, and on that basis allege, that on or about May 26, 2009, Robert K. Schraner, General Counsel for ACM, forwarded Workmen's May 8, 2009 letter to Indian Harbor and/or its counsel, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, and requested that Indian Harbor provide an affidavit pursuant to Florida Statute section  627.4137.

31.     Florida Statute section 627.4137 provides:

(1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the

COMPLAINT FOR DECLARATORY RELIEF, ETC.

insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:

(a) The name of the insurer.

(b) The name of each insured.

(c) The limits of the liability coverage.

(d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.

(e) A copy of the policy.

In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.  The insurer shall then supply the information required in the subsection to the claimant within 30 days of receipt of such request.

(2) The statement required by subsection (1) shall be amended immediately upon discovery of fats calling for an amendment to such statement.

32.     Plaintiffs are informed and believe, and on that basis allege, that on or about May 27, 2009, Indian Harbor and/or its counsel provided a signed, but not notarized, affidavit of Ella Goodyear on behalf of Indian Harbor (the "Goodyear Affidavit") to Robert K. Schraner.  In the Goodyear Affidavit, Ms. Goodyear stated in part:  "In accordance with Florida Statute Sec. 627.4137 and pursuant to the April 27, 2009

-13-

disclosure request from counsel for Workmen, . . ."  In the Affidavit, Ms. Goodyear identifies the Primary Going Forward Policy only.  A true and correct copy of the Goodyear Affidavit is attached hereto as Exhibit 6.

33.     Plaintiffs are informed and believe, and on that basis allege, that on or about May 27, 2009, Robert K. Schraner forwarded by e-mail a copy of the Goodyear Affidavit to Workmen's.

34.     Plaintiffs are informed and believe, and on that basis allege, that on or about June 15, 2009, Indian Harbor's counsel sent a supplemental reservation of rights letter to ACM concerning Workmen's claim against ACM arising from its handling of the Youngblood Claim ("Indian Harbor's Supplemental Reservation of Rights").  Indian Harbor's Supplemental Reservation of Rights includes the following description of Workmen's' claim:  "Workmen's has taken the position that at least by August 8, 2007 ACM should have known that liability was established as to Michael Wright and should have offered the $10,000 policy limit on or before August 8, 2007.  Thus, it is Workmen's position that ACM's negligence occurred on or before August 8, 2007."  A true and correct copy of Indian Harbor's Supplemental Reservation of Rights is attached as Exhibit 7.

35.     Plaintiffs are informed and believe, and on that basis allege, that on June 22, 2009, the parties in the Youngblood Action participated in mediation.  Workmen's negotiated a settlement of the Youngblood Action for $7.5 million.  At the mediation, Workmen's agreed to pay $2.5 million toward the $7.5 million settlement, and to accept Indian Harbor's contribution of the $5 million policy limit of its Primary Going Forward Policy in exchange for Workmen's' release of its professional negligence claim against ACM (the "E&O Claim").

36.     After the mediation, Workmen's claimed that ACM and/or its insurers had failed to disclose that ACM had more than $5 million in E&O liability coverage potentially applicable to the E&O Claim.

37.     On or about August 7, 2009, Workmen's and Indian Harbor proceeded to settle the Youngblood Action, with Workmen's paying $2.5 million and Indian Harbor paying the $5 million limit under the Primary Going Forward Policy.  However, Workmen's refused to release ACM or Indian Harbor in connection with the E&O Claim.

38.     On December 4, 2009, Workmen's filed the E&O Action against ACM, based upon ACM's alleged negligence in administering the Youngblood Claim, which includes alleged acts and omissions in "professional services" from ACM's May 8, 2007 receipt of notice of the Accident to at least September 7, 2007, when ACM responded to the Youngbloods' attorney's request for a settlement offer with a request for additional documentation.

39.     In the E&O Action, Workmen's seeks to recoup its $2.5 million contribution to settlement of the Youngblood Action.  Workmen's also seeks to recover approximately $800,000 in damages that it claims are "additional costs that were ultimately directly associated with the [Youngblood Claim] brought about solely by improper claims handling on the part of . . . [ACM]."

40.     ACM tendered its defense in the E&O Action to Indian Harbor and Liberty Mutual.

41.     By correspondence from its counsel dated December 23, 2009, and January 14, 2010, Indian Harbor denied coverage, both defense and indemnity, for the

E&O Action.  A true and correct copy of the January 14, 2010 denial letter is attached as Exhibit 8.

42.     Liberty Mutual agreed to defend ACM in the E&O Action under the Excess Going Forward Policy under a full reservation of rights, including the right to recoup any payments on the basis that, inter alia, all primary and/or underlying coverage applicable to the E&O Action was not exhausted.

43.     Plaintiffs are informed and believe, and upon that basis allege, that Indian Harbor has not exhausted the limits of the Primary Run-off Policy.

44.     Liberty Mutual and Liberty Surplus advised Indian Harbor and ACM of their position that neither Liberty Mutual nor Liberty Surplus has a duty to defend ACM or pay its "claims expenses" in connection with the E&O Action under the Excess Going Forward Policy or the Excess Run-Off Policy, unless and until the underlying limits of both the Primary Run-Off Policy and the Primary Going Forward are properly exhausted. Liberty Mutual and Liberty Surplus have each advised Indian Harbor and ACM that they will seek reimbursement for any amounts they have paid or will pay for "claims expenses" in connection with the E&O Action.

45.     Indian Harbor continues to refuse to defend ACM (or pay its "claims expenses") in connection with the E&O Action under the Primary Run-Off Policy or the Primary Going Forward Policy.

COMPLAINT FOR DECLARATORY RELIEF, ETC.

## FIRST CLAIM FOR RELIEF

### (DECLARATORY RELIEF)

### (By Plaintiffs Against All Defendants)

46.     Liberty Mutual and Liberty Surplus incorporate the allegations contained in the paragraphs above as though set forth fully herein.

47.     An actual controversy now exists between Liberty Mutual on the one hand, and Indian Harbor and ACM on the other hand, regarding Liberty Mutual's rights and duties with regards to the E&O Action under the Excess Going Forward Policy.

48.     An actual controversy exists between Liberty Surplus on one hand, and Indian Harbor and ACM on the other hand, regarding Liberty Surplus' rights and duties with regards to the E&O Action under the Excess Run-Off Policy.

49.     An actual controversy exists between Liberty Mutual and Liberty Surplus on one hand, and Indian Harbor and ACM on the other hand, regarding Indian Harbor's and ACM's rights and duties with regards to the E&O Action under the Primary Run-Off Policy and/or Primary Going Forward Policy.

50.     Liberty Mutual and Liberty Surplus contend that Indian Harbor is obligated to defend ACM or reimburse its defense costs (including payment of "claims expenses") in the E&O Action under the Primary Run-Off Policy and/or the Primary Going Forward Policy.  Liberty Mutual and Liberty Surplus further contend that Indian Harbor must exhaust whatever remains of its $5 million limits under the Primary Run-Off Policy and the $5 million limits under the Primary Going Forward Policy before Liberty Mutual or Liberty Surplus has any duty to defend ACM or reimburse its defense costs

1   (including payment of "claims expenses") in connection with the E&O Action under either

2   the Excess Run-Off Policy or the Excess Going Forward Policy.

3

4          51.     Indian Harbor disputes the contentions of Liberty Mutual and Liberty

5   Surplus in the preceding paragraphs, and contends that it is not obligated to defend ACM

6   or reimburse its defense costs (including payment of "claims expenses") in the E&O

7   Action under the Primary Run-off Policy or the Primary Going Forward Policy.

8

9          52.     Liberty Mutual and Liberty Surplus are entitled to a judicial

10  determination of their rights, status and legal relations under their respective policies

11  pursuant to 28 U.S.C. § 2201.

12

13         53.     Liberty Mutual and Liberty Surplus have no plain, speedy or adequate

14  remedy at law to resolve the controversies between them and defendants Indian Harbor

15  and ACM.

16

17         54.     Liberty Mutual and Liberty Surplus seek a judicial determination by

18  this Court, pursuant to 28 U.S.C. § 2201, of the following:

19

20                a.      That Indian Harbor is obligated to defend ACM in the E&O

21  Action and/or pay "claims expenses" in connection with the E&O Action under the

22  Primary Run-Off Policy;

23

24                b.      That Liberty Mutual has no duty to defend ACM in the E&O

25  Action or pay "claims expenses" in connection with the E&O Action, unless and until the

26  limits of both the Primary Run-off Policy and the Primary Going Forward Policy are

27  properly exhausted;

28

COMPLAINT FOR DECLARATORY RELIEF, ETC.

c.      That Liberty Surplus has no duty to defend ACM in the E&O Action or pay "claims expenses" in connection with the E&O Action, unless and until the limits of both the Primary Run-off Policy and the Primary Going Forward Policy are properly exhausted;

## SECOND CLAIM FOR RELIEF
### (EQUITABLE SUBROGATION)
**(By Plaintiffs Against Defendant Indian Harbor)**

55.      Liberty Mutual and Liberty Surplus incorporate the allegations of the paragraphs above as though set forth fully herein.

56.      Liberty Mutual and Liberty Surplus are informed and believe, and upon that basis allege, that Indian Harbor is equitably obligated to reimburse Liberty Mutual and/or Liberty Surplus for any amounts it or they have paid or will pay in "claims expenses" in connection with the E&O Action, plus prejudgment interest thereon because Indian Harbor's obligation to defend and/or pay "claims expenses" in connection with E&O Action is primary to that of Liberty Mutual and/or Liberty Surplus.

## THIRD CLAIM FOR RELIEF
### (EQUITABLE CONTRIBUTION)
**(By Plaintiff Liberty Mutual Against Defendant Indian Harbor)**

57.      Liberty Mutual incorporates the allegations contained in the paragraphs above as though set forth fully herein.

58.      If the Court determines that Liberty Mutual has a duty to defend, or pay "claims expenses," in connection with the E&O Action under the Excess Going

-19-

COMPLAINT FOR DECLARATORY RELIEF, ETC.

1   Forward Policy, Liberty Mutual is entitled to equitable contribution from Indian Harbor for

2   any such payments in excess of its equitable share, plus prejudgment interest thereon.

3

4                          **PRAYER FOR RELIEF**

5

6                   WHEREFORE, Liberty Mutual and Liberty Surplus pray for relief as

7   follows:

8

9   **ON THE FIRST CLAIM FOR RELIEF:**

10                  1.      For a declaration that Indian Harbor is obligated to defend ACM in

11  the E&O Action and/or pay "claims expenses" in connection with the E&O Action under

12  the Primary Run-Off Policy;

13

14                  2.      For a declaration that Liberty Mutual has no duty to defend ACM in

15  the E&O Action and/or pay "claims expenses" in connection with the E&O Action, unless

16  and until the limits of both the Primary Run-Off Policy and the Primary Going Forward

17  Policy are properly exhausted;

18

19                  3.      For a declaration that Liberty Surplus has no duty to defend ACM in

20  the E&O Action and/or pay "claims expenses" in connection with the E&O Action, unless

21  and until the limits of both the Primary Run-Off Policy and the Primary Going Forward

22  Policy are properly exhausted;

23

24                  4.      For costs of suit herein; and

25

26                  5.      For such other and further relief the Court deems just and proper.

27

28

W02-WEST:1DED1\403128190.5                              COMPLAINT FOR DECLARATORY RELIEF, ETC.

**ON THE SECOND CLAIM FOR RELIEF:**

              1.      For reimbursement of any amounts Liberty Mutual or Liberty Surplus has paid or will pay for defense and/or "claims expenses" in connection with the E&O Action,  plus prejudgment interest thereon.

              2.      For costs of suit herein; and

              3.      For such other and further relief the Court deems just and proper.

**ON THE THIRD CLAIM FOR RELIEF:**

              1.      For reimbursement of any amounts Liberty Mutual has paid or will pay in excess of its equitable share for defense and/or "claims expenses" in connection with the E&O Action, plus prejudgment interest thereon.

              2.      For costs of suit herein; and

              3.      For such other and further relief the Court deems just and proper.

Dated:  March 28, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____*s/ Shannon Z. Petersen*_____
SHANNON Z. PETERSEN

Attorneys for Plaintiffs
LIBERTY MUTUAL INSURANCE COMPANY and
LIBERTY SURPLUS INSURANCE CORPORATION
Email: spetersen@sheppardmullin.com

-21-

COMPLAINT FOR DECLARATORY RELIEF, ETC.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY SURPLUS INSURANCE CORPORATION

**DEFENDANTS**
INDIAN HARBOR INSURANCE COMPANY, a North Dakota corporation, and AMERICAN CLAIMS MANAGEMENT, INC., a California corporation

**(b)** County of Residence of First Listed Plaintiff <u>State of Massachusetts</u>
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant <u>State of North Dakota</u>
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Sheppard, Mullin, Richter & Hampton LLP
Shannon Z. Petersen, Cal. Bar No. 211426
501 W. Broadway, 19th Floor, San Diego, California 92101
Tel 619-338-6694; Fax 619-234-3815
Email: spetersen@sheppardmullin.com

Attorneys (If Known)

**'11 CV 0624 BEN NLS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☒ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med. Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities – Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus – Alien Detainee
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Insurance coverage dispute involving claims for 1) declaratory relief, 2) equitable subrogation, and 3) equitable contribution

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE
March 28, 2011

SIGNATURE OF ATTORNEY OF RECORD
s/ Shannon Z. Petersen
Email: spetersen@sheppardmullin.com

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com