FILED
2011 JUL 19 AM 10: 20
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY SURPLUS INSURANCE CORPORATION,<br><br>Plaintiffs,<br>vs.<br><br>INDIAN HARBOR INSURANCE COMPANY and AMERICAN CLAIMS MANAGEMENT, INC.,<br><br>Defendants. | CASE NO. 11-cv-0624 BEN (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART INDIAN HARBOR INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT**<br><br>[Docket No. 5] |

Before the Court is Indian Harbor's Motion to Dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 5.) For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**. The Second Claim is dismissed to the extent it is brought by Liberty Surplus Insurance Corporation, and the Third Claim is dismissed in its entirety. The First Claim remains in its entirety, and the Second Claim remains to the extent it is brought by Liberty Mutual Insurance Company.

## BACKGROUND

Defendant American Claims Management, Inc. ("ACM") is a third party claims administrator for insurance companies. (Compl. ¶ 7.) Defendant Indian Harbor Insurance Company provided ACM with primary professional errors and omissions ("E&O") liability coverage for its administration of insurance claims. (*Id.*) Indian Harbor issued ACM Policy No. MPP0017110 02, which "provides

ACM with $5 million in primary coverage for 'damages' and 'claims expenses' by reason of an act or omission in the performance of 'professional services,' committed at any time from August 28, 1999 through August 8, 2007, for a 'claim' first made and reported in writing to Indian Harbor between August 28, 2006 and August 8, 2012" ("Primary Run-Off Policy").[1] (*Id.* ¶¶ 7, 9.)

In August 2007, ACM was acquired by Arrowhead General Insurance Agency. (*Id.* ¶ 8.) ACM cancelled the Primary Run-Off Policy, effective August 8, 2007, and purchased a sixty-month Extended Reporting Period to "cover its 'run-off' liability for pre-acquisition acts and omissions." (*Id.*) In addition, ACM purchased Policy No. MPP002387100, which "provided $5 million primary E&O liability coverage to ACM for 'damages' and 'claims expenses' by reason of an act or omission in the performance of 'professional services' committed at any time from August 8, 2007 to October 1, 2008, for a 'claim' first made and reported in writing to Indian Harbor between August 8, 2007 and October 1, 2008." (*Id.* ¶ 10.) ACM renewed this policy for the next annual period, by purchasing Policy No. MPP0023871-01, which "provides $5 million primary E&O liability coverage to ACM for 'damages' and 'claims expenses' by reason of an act or omission in the performance of 'professional services' committed at any time from August 8, 2007 to October 1, 2009, for a 'claim' first made and reported in writing to Indian Harbor between October 1, 2008 and October 1, 2009" ("Primary Going Forward Policy"). (*Id.* ¶ 11.)

Plaintiffs Liberty Mutual Insurance Company and Liberty Surplus Insurance Corporation provided ACM with excess professional errors and omissions liability coverage for its administration of insurance claims. Liberty Surplus issued ACM Policy No. EO5N578738001, which "provides ACM with $5 million in following form excess E&O liability coverage to the Primary Run-Off Policy, for 'damages' and 'claims expenses' by reason of an act or omission in the performance of 'professional services' committed at any time from August 26, 1999 to August 8, 2007, for a 'claim' first made and reported in writing to Liberty Surplus between August 7, 2007 and August 8, 2012" ("Excess Run-Off Policy") (*Id.* ¶ 14.) In addition, Liberty Mutual issued ACM Policy No. EO4N578741002, which "provides $5 million in following form excess E&O liability coverage to the

---

[1] This Order will refer to the various insurance policies by the names Plaintiffs give them in the Complaint.

Primary Going Forward Policy, for 'damages' and 'claims expenses' by reason of an act or omission in the performance of 'professional services' commited from August 8, 2007 to October 1, 2009, for a 'claim' first made and reported in writing to Liberty Mutual between October 1, 2008 and October 1, 2009" ("Excess Going Forward Policy"). (*Id.* ¶ 15.)

On February 3, 2007, ACM and Workmen's Auto Insurance Company entered into a Claims Management Agreement, in which ACM agreed to provide Workmen's with adjusting and claims handling services for Workmen's' Florida automobile liability claims. (*Id.* ¶ 16.) On December 4, 2009, Workmen's sued ACM in the Los Angeles County Superior Court, in *Workmen's Auto Insurance Company v. American Claims Management, Inc.*, Case No. BC427388 ("E&O Action"). (*Id.* ¶ 17.) On May 7, 2007, Workmen's insured, Michael Wright, and Katherine Youngblood were involved in an automobile accident in Florida. (*Id.*) Youngblood was seriously injured, and subsequently filed a personal injury claim against Wright ("Youngblood Claim"). (*Id.*) The E&O Action is "based upon ACM's alleged negligence in administering the Youngblood Claim, which includes alleged acts and omissions in 'professional services' from ACM's May 8, 2007 receipt of notice of the Accident to at least September 7, 2007, when ACM responded to the Youngbloods' attorney's request for a settlement offer with a request for additional documentation." (*Id.* ¶ 38.)

ACM tendered its defense in the E&O Action to both Indian Harbor and Liberty Mutual. (*Id.* ¶ 40.) On February 3, 2009,[2] ACM's broker notified Indian Harbor under both the Primary Run-Off Policy and the Primary Going Forward Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim. (*Id.* ¶¶ 25, 26.) On February 6, 2009, ACM's broker notified Liberty Surplus and Liberty Mutual under the Excess Run-Off Policy and the Excess Going Forward Policy, respectively, of the claim. (*Id.* ¶¶ 27, 28.)

On June 22, 2009, the Youngblood Action settled for $7.5 million. (*Id.* ¶ 35.) At mediation, Workmen's agreed to pay $2.5 million toward the settlement, and to accept Indian Harbor's contribution of the $5 million policy limit under its Primary Going Forward Policy, in exchange for Workmen's' release of the E&O Claim against ACM. (*Id.*) After mediation, Workmen's claimed that

---

[2] Although the Complaint states that ACM's broker notified Indian Harbor on February 3, 2009, Indian Harbor asserts that notice was in fact given to Indian Harbor under the Primary Going Forward Policy on February 6, 2009. (Def. Mot. at 13 n.1.)

ACM had failed to disclose that ACM had more than $5 million in E&O liability coverage potentially applicable to the E&O Claim. (*Id.* ¶ 36.) On August 7, 2009, Workmen's and Indian Harbor settled, with Workmen's paying $2.5 million and Indian Harbor paying $5 million under the Primary Going Forward Policy. (*Id.* ¶ 37.) Workmen's, however, refused to release ACM or Indian Harbor from liability for the E&O Claim. (*Id.*)

On December 23, 2009 and again on January 14, 2010, Indian Harbor denied ACM both defense and indemnity coverage for the E&O Action. (*Id.* ¶ 41.) Liberty Mutual agreed to defend ACM in the E&O Action under the Excess Going Forward Policy. (*Id.* ¶ 42.) Liberty Mutual, however, reserved its right to recover any payments it made on the basis that the primary coverage for the E&O Action had not been exhausted. (*Id.*)

Plaintiffs commenced the present action on March 28, 2011. Plaintiffs allege that "neither Liberty Mutual nor Liberty Surplus has a duty to defend ACM or pay its 'claims expenses' in connection with the E&O Action under the Excess Going Forward Policy or the Excess Run-Off Policy, unless and until the underlying limits of both the Primary Run-Off Policy and the Primary Going Forward [Policy] are properly exhausted." (*Id.* ¶¶ 43, 44.) Plaintiffs "seek reimbursement for any amounts they have paid or will pay for 'claims expenses' in connection with the E&O Action." (*Id.* ¶ 44.) The complaint asserts three claims: (1) Declaratory Relief brought by both Plaintiffs against both Indian Harbor and ACM, (2) Equitable Subrogation brought by both Plaintiffs against Indian Harbor, and (3) Equitable Contribution brought by Liberty Mutual against Indian Harbor.

Presently before the Court is Indian Harbor's Motion to Dismiss the Complaint. Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal

theory under which relief may be granted. *Id.* at 556.

Indian Harbor moves to dismiss each of Plaintiffs' three claims. Each claim will be addressed in turn.

## I. FIRST CLAIM: DECLARATORY RELIEF

Plaintiffs' First Claim seeks Declaratory Relief against both Defendants. Pursuant to 28 U.S.C. § 2201, Plaintiffs seeks a judicial determination:

> a. That Indian Harbor is obligated to defend ACM in the E&O Action and/or pay 'claims expenses' in connection with the E&O Action under the Primary Run-Off Policy;
> b. That Liberty Mutual has no duty to defend ACM in the E&O Action or pay 'claims expenses' in connection with the E&O Action, unless and until the limits of both the Primary Run-Off Policy and the Primary Going Forward Policy are properly exhausted;
> c. That Liberty Surplus has no duty to defend ACM in the E&O Action or pay 'claims expenses' in connection with the E&O Action, unless and until the limits of both the Primary Run-off Policy and the Primary Going Forward Policy are properly exhausted.

(Compl. ¶ 54.)

"[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Indian Harbor argues that Plaintiffs do not have standing to bring a declaratory judgment action against Indian Harbor. First, Indian Harbor argues that "the declaratory judgment action as to Indian Harbor is not properly brought as a declaratory judgment action and is duplicative of Count II of the Complaint for Equitable Subrogation." (Def. Mot. at 10.) In support of this argument, Indian Harbor cites *Zurich Specialties London Ltd. v. Evanston Insurance Company*, No. G039476, 2008 WL 2510604 (Cal. Ct. App. June 24, 2008). In *Zurich*, the court noted that the plaintiff's cause of action for "declaratory relief/indemnity" appeared to be an "inartfully pled subrogation claim." *Id.* at *2. The court then granted summary judgment against the plaintiff on this claim both because it failed on the merits as a subrogation claim, and because "[t]o the extent this cause of action intended to plead something else, it fails to do so with sufficient clarity to entitle Zurich to any relief." *Id.* at *3. *Zurich* does not stand for the proposition that a claim for declaratory judgment should be dismissed if it is

duplicative of a claim for equitable subrogation. On the contrary, an excess insurer may sue a primary insurer for both equitable subrogation and declaratory relief. *See Sequoia Ins. Co. v. Royal Ins. Co. of Am.*, 971 F.2d 1385, 1391–92 (9th Cir. 1992).

Second, in its reply brief, Indian Harbor slightly changes its argument by asserting that "the declaratory judgment action does not state an actual controversy *and* is nothing more than an equitable subrogation claim, i.e. Liberty is standing in the shoes of ACM asserting that Indian Harbor should be paying defense fees." (Def. Reply at 4.) In support of this argument, Indian Harbor does not cite any authority in addition to *Zurich*. As discussed above, however, *Zurich* does not support the proposition that Plaintiffs do not have standing to seek a declaratory judgment in these circumstances. Accordingly, Indian Harbor's motion to dismiss the First Claim is **DENIED**.

## II.   SECOND CLAIM: EQUITABLE SUBROGATION

Plaintiffs' second claim for equitable subrogation alleges that "Indian Harbor is equitably obligated to reimburse Liberty Mutual and/or Liberty Surplus for any amounts it or they have paid or will pay in 'claims expenses' in connection with the E&O Action, plus prejudgment interest thereon because Indian Harbor's obligation to defend and/or pay 'claims expenses' in connection with E&O Action is primary to that of Liberty Mutual and/or Liberty Surplus." (Compl. ¶ 56.)

"In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1291–92 (1998). In California, a claim for equitable subrogation has eight elements:

> (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

1 | *Id.* at 1292.

First, Indian Harbor argues that Liberty Surplus does not have standing to bring an equitable subrogation claim. Specifically, Indian Harbor argues that "the Complaint expressly alleges that Liberty Mutual, not Liberty Surplus, is defending and therefore paying claims expenses in connection with the Workmen's Lawsuit. Therefore, Liberty Surplus cannot and does not have a claim for equitable subrogation against Indian Harbor where Liberty Surplus has undertaken absolutely no obligations with respect to the payment of claims expenses on behalf of ACM." (Def. Mot. at 12.) Plaintiffs' opposition brief does not dispute this. Accordingly, the Second Claim is **DISMISSED** to the extent that it is brought by Liberty Surplus.

Second, Indian Harbor argues that Plaintiffs have not adequately pled the first, second, third, fifth, or seventh elements of equitable subrogation. Each of these elements will be addressed in turn.

### A.      The First and Fifth Elements

Indian Harbor argues that the Complaint has not adequately pled the first and fifth elements of equitable subrogation because it does not plead that ACM suffered a loss for which Indian Harbor is liable, for several reasons.

First, Indian Harbor argues that the Primary Going Forward Policy had a $5 million limit of liability, and Indian Harbor paid the entirety of that limit in settlement of the Youngblood Action. Plaintiffs argue that although Indian Harbor paid $5 million under the Primary Going Forward Policy in an attempt to settle the E&O Claim, the Primary Going Forward Policy states that the limit of liability is $5 million "in addition to and in excess of the deductible" of $75,000 for the first claim. (Compl. Ex. 2, at 47, 50.)[3] The Excess Going Forward Policy states that Liberty Mutual "will pay all of loss in excess of both the Underlying Limit of Liability [$5 million] plus the applicable retention or deductible under the Primary Policy." (Compl. Ex. 4, at 91.) Plaintiffs allege that Indian Harbor recovered $75,000 from ACM after it paid the $5 million, and Indian Harbor does not dispute this. Therefore, "Indian Harbor must exhaust whatever remains of its $5 million limits under the Primary Run-Off Policy and the $5 million limits under the Primary Going Forward Policy before Liberty

---

[3] When deciding a motion to dismiss, a court may properly consider exhibits attached to the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

Mutual or Liberty Surplus has any duty to defend ACM or reimburse its defense costs." (Compl. ¶ 50.) Plaintiffs have alleged enough facts to establish that Indian Harbor has not exhausted the limits of the Primary Going Forward Policy.

Second, Indian Harbor argues that it does not have any obligation to provide coverage under the Primary Run-Off Policy. The Primary Run-Off Policy provides coverage for errors and omissions committed by ACM from August 28, 1999 to August 8, 2007, while the Primary Going Forward Policy provides coverage for errors and omissions committed by ACM from August 8, 2007 to October 1, 2009. Plaintiffs argue that the Primary Run-Off Policy does not require that ACM's liability be based solely on acts or omissions committed before August 8, 2007, nor does the Primary Going Forward Policy require that ACM's liability be based solely on acts or omissions committed on or after August 2007. In addition, neither policy prohibits a single claim alleging that wrongful acts occurred both before and after August 8, 2007 from being covered under both Primary Policies. "Thus, a single 'claim' based on ACM's acts or omissions in performance of 'professional services' committed *both before and after* August 8, 2007, is covered under both Primary Policies, as long as the claim is timely reported." (Pl. Opp. at 17.)

Plaintiffs allege that in the E&O Action, Workmen's alleges that ACM committed wrongful acts before and after August 8, 2007, implicating Indian Harbor's obligation to defend ACM under both the Primary Run-Off Policy and the Primary Going Forward Policy. For instance, Plaintiffs allege that within a week of Youngblood's accident on May 8, 2007, ACM knew that Youngblood was seriously injured. (Compl. ¶ 18.) Plaintiffs also allege that on July 6, 2007, an ACM supervisor admonished an ACM claims handler for failing to give the Youngblood Claim top priority. (*Id.*) In addition, Plaintiffs allege that ACM continued to fail to offer policy limits to settle the Youngblood Claim until September 18, 2007, but by that time, Youngblood refused the $10,000 settlement and sued. (*Id.* ¶¶ 18, 21–23.) Although the Court declines to find exactly when ACM committed wrongful acts, Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal evidence that wrongful acts occurred both before and after August 8, 2007, implicating both Primary Policies.

Third, Indian Harbor argues that the Primary Run-Off Policy's Optional Extended Reporting

Period does not allow the reporting of potential claims. According to Indian Harbor, "there was never a claim, but only a potential claim asserted by Workmen's against ACM, as neither Workmen's nor ACM were ever named in the [Youngblood] Action as defendants. . . . [T]he matter remained a potential claim until just prior to mediation when Workmen's demanded that ACM pay its policy limits." (Def. Mot. at 14.)

The Primary Run-Off Policy defines "claim" as "a demand for money or services naming the Insured arising out of an act or omission in the performance of professional services. A claim also includes the service of suit or the institution of an arbitration proceeding against the Insured." (Compl. Ex. 1, at 29.) The Complaint alleges that in June 2009, Indian Harbor agreed to pay $5 million to settle the Youngblood Claim, in exchange for Workmen's' release of the E&O Claim, but "Workmen's refused to release ACM or Indian Harbor in connection with the E&O Claim." (*Id.* ¶¶ 35, 37.) That Indian Harbor agreed to pay $5 million to settle the Youngblood Claim in exchange for Workmen's release of the E&O Claim against ACM, suggests that Workmen's made a claim against ACM in June 2009. Although the Court declines to find exactly when, and if, Workmen's made a claim against ACM, Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal that Workmen's made a claim against ACM in June 2009, which implicated the Primary Run-Off Policy.

### B.     The Second and Third Elements

Indian Harbor argues that Plaintiffs have not adequately pled the second or third elements of equitable subrogation for several reasons. First, Indian Harbor argues that "to the extent any coverage exists for the Workmen's Action as a result of the potential claim tendered in February 2009 under the [Primary Going Forward Policy], that Policy was exhausted and any responsibility for 'claims expenses' above and beyond the $5 million limit belong solely to the excess carrier, Liberty Mutual." (Def. Mot. at 15.) As discussed above, Plaintiffs have alleged enough facts to establish that Indian Harbor has not exhausted the limits of the Primary Going Forward Policy.

Second, Indian Harbor argues that it "had no obligation to provide coverage for a potential claim under the [Primary Run-Off Policy]." (Def. Mot. at 15.) As discussed above, however, Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal

1  evidence that wrongful acts occurred both before and after August 8, 2007, implicating both the
2  Primary Going Forward Policy and the Primary Run-Off Policy. In addition, as discussed above,
3  Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal that
4  Workmen's made a claim—as opposed to a potential claim—against ACM in June 2009.

### C. The Seventh Element

Indian Harbor argues that Plaintiffs have not adequately pled the seventh element of equitable subrogation because "[t]he interest of justice lies in determining that Liberty Mutual, the excess carrier, which acknowledges receipt of the potential claim and the exhaustion of the [Primary Going Forward Policy], meet its obligations under the excess policy for which ACM paid its premium." (Def. Mot. at 16.) As explained above, Plaintiffs have alleged enough facts to establish that (1) ACM's wrongful acts plausibly occurred both before and after August 8, 2007, implicating both Primary Policies, and (2) the Primary Policies are not yet exhausted. Although the Court declines to find which party's position is supported by the interest of justice, Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal evidence that justice requires that the loss be entirely shifted from the insurer to the defendant.

Accordingly, Liberty Mutual has adequately pled the first, second, third, fifth, and seventh elements of equitable subrogation. Indian Harbor's motion to dismiss the Second Claim is **DENIED** to the extent the Second Claim is brought by Liberty Mutual.

### III. THIRD CLAIM: EQUITABLE CONTRIBUTION

Liberty Mutual's third claim for equitable contribution states, "If the Court determines that Liberty Mutual has a duty to defend, or pay 'claims expenses,' in connection with the E&O Action under the Excess Going Forward Policy, Liberty Mutual is entitled to equitable contribution from Indian Harbor for any such payments in excess of its equitable share, plus prejudgment interest thereon." (Compl. ¶ 58).

"As a general rule, there is no contribution between a primary and an excess carrier." *Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063, 1078 (1999). "[B]ased upon equitable principles, the duty to contribute applies to insurers that share the same level of obligation on the risk as to the same insured." *Id.* at 1080. "[W]here different insurance carriers cover differing

risks and liabilities, they may proceed against each other for reimbursement by subrogation rather than by contribution." *Id.* at 1078. Therefore, Liberty Mutual, as an excess insurer for ACM, may not seek equitable contribution from Indian Harbor, the primary insurer for ACM.

Plaintiffs "agree that the cause of action for equitable contribution could be dismissed, *but only if* the Court specifically rules that the [Excess Going Forward Policy] remains 'excess' vis-a-vis the [Primary] Run-Off Policy after Indian Harbor properly exhausts the [Primary Going Forward Policy], i.e., neither Excess Policy has any obligation to defend ACM if Indian Harbor is obligated to defend ACM under either Primary Policy." (Pl. Opp. at 22.) There is no dispute between the parties, however, that Liberty Mutual is the excess insurer for ACM, while Indian Harbor is the primary insurer for ACM. (*See* Compl. ¶¶ 7–11, 15; Def. Mot. at 11 ("There is no dispute that Indian Harbor is the primary insurer in relation to ACM and Liberty Mutual is the excess insurer with respect to ACM.").) The Court declines to make such a ruling in the absence of a genuine dispute. Accordingly, the Third Claim is **DISMISSED**.

## CONCLUSION

For the reasons set forth above, Indian Harbor's Motion to Dismiss the Complaint is **GRANTED IN PART AND DENIED IN PART**. The Second Claim is dismissed to the extent it is brought by Liberty Surplus, and the Third Claim is dismissed in its entirety. The First Claim remains in its entirety, and the Second Claim remains to the extent it is brought by Liberty Mutual. Plaintiff is **GRANTED** forty-five (45) days from the date of this Order to file a First Amended Complaint.

**IT IS SO ORDERED.**

DATED: July 8, 2011

HON. ROGER T. BENITEZ
United States District Court Judge