FILED
FEB 28 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY SURPLUS INSURANCE CORPORATION,<br><br>Plaintiffs,<br>vs.<br><br>INDIAN HARBOR INSURANCE COMPANY and AMERICAN CLAIMS MANAGEMENT, INC.,<br><br>Defendants. | CASE NO. 11-CV-0624 BEN (NLS)<br><br>ORDER:<br><br>(1) DENYING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(2) GRANTING INDIAN HARBOR INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>[Docket Nos. 32, 34] |

Presently before the Court is Plaintiff Liberty Mutual Insurance Company's Motion for Partial Summary Judgment (Docket No. 32) and Defendant Indian Harbor Insurance Company's Motion for Partial Summary Judgment (Docket No. 34). For the reasons set forth below, Liberty Mutual's Motion is **DENIED** and Indian Harbor's Motion is **GRANTED**.

### BACKGROUND

Defendant American Claims Management, Inc. ("ACM") is a third party claims administrator for insurance companies. Defendant Indian Harbor Insurance Company provided ACM with primary professional errors and omissions ("E&O") liability coverage for its administration of insurance claims. In 2006, Indian Harbor issued ACM Policy No. MPP0017110 02 ("Primary Run-Off Policy"). The Primary Run-Off Policy, as amended by the Extended Reporting Period, provides ACM with $5

million in primary coverage for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services," committed at any time from August 28, 1999 through August 8, 2007, for a "claim" first made and reported in writing to Indian Harbor between August 28, 2006 and August 8, 2012. (Pl. Requests for Admission to Indian Harbor as to the Genuineness of Certain Documents ("RFAG"), Exh. 1.) In August 2007, ACM was acquired by Arrowhead General Insurance Agency. ACM cancelled the Primary Run-Off Policy, effective August 8, 2007.

ACM purchased a new primary E&O policy from Indian Harbor, which provided $5 million primary E&O liability coverage to ACM for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed at any time from August 8, 2007 to October 1, 2008, for a "claim" first made and reported in writing to Indian Harbor between August 8, 2007 and October 1, 2008. ACM renewed this policy for the next annual period by purchasing Policy No. MPP0023871-01, which provides $5 million primary E&O liability coverage to ACM for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed at any time from August 8, 2007 to October 1, 2009, for a "claim" first made and reported in writing to Indian Harbor between October 1, 2008 and October 1, 2009 ("Primary 2008-2009 Policy"). (Id., Exh. 2.)

Plaintiffs Liberty Mutual Insurance Company and Liberty Surplus Insurance Corporation provided ACM with excess professional E&O liability coverage for its administration of insurance claims. Liberty Surplus issued ACM Policy No. EO5N578738001, which provides ACM with $5 million in following form excess E&O liability coverage to the Primary Run-Off Policy, for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed at any time from August 26, 1999 to August 8, 2007, for a "claim" first made and reported in writing to Liberty Surplus between August 7, 2007 and August 8, 2012 ("Excess Run-Off Policy"). (Id., Exh. 3.) In addition, Liberty Mutual issued ACM Policy No. EO4N578741002, which provides $5 million in following form excess E&O liability coverage to the Primary 2008-2009 Policy, for "damages" and "claims expenses" by reason of an act or omission in the performance of "professional services" committed from August 8, 2007 to October 1, 2009, for a "claim" first made and reported in writing to Liberty Mutual between October 1, 2008 and October 1, 2009 ("Excess 2008-2009

1 Policy"). (*Id.*, Exh. 4.)

2 On February 3, 2007, ACM and Workmen's Auto Insurance Company entered into a Claims Management Agreement, in which ACM agreed to provide Workmen's with adjusting and claims handling services for Workmen's' Florida automobile liability claims. On December 4, 2009, Workmen's sued ACM in the Los Angeles County Superior Court, in *Workmen's Auto Insurance Company v. American Claims Management, Inc.*, Case No. BC427388 ("E&O Action").[1] On May 7, 2007, Workmen's' insured, Michael Wright, and Katherine Youngblood were involved in an automobile accident in Florida. Youngblood was seriously injured, and subsequently filed a personal injury claim against Wright ("Youngblood Claim"). The E&O Action is based upon ACM's alleged negligence in administering the Youngblood Claim.

ACM tendered its defense in the E&O Action to both Indian Harbor and Liberty Mutual. On February 6, 2009, ACM's broker notified Indian Harbor under both the Primary Run-Off Policy and the Primary 2008-2009 Policy of a potential E&O claim by Workmen's against ACM arising from its handling of the Youngblood Claim. On February 6, 2009, ACM's broker notified Liberty Surplus and Liberty Mutual under the Excess Run-Off Policy and the Excess 2008-2009 Policy, respectively, of the claim.

On June 22, 2009, the Youngblood Action settled for $7.5 million. At mediation, Workmen's agreed to pay $2.5 million toward the settlement, and to accept Indian Harbor's contribution of the $5 million policy limit under its Primary 2008-2009 Policy, in exchange for Workmen's' release of the E&O Claim against ACM. After mediation, Workmen's claimed that ACM had failed to disclose that ACM had more than $5 million in E&O liability coverage potentially applicable to the E&O Claim. On August 7, 2009, Workmen's and Indian Harbor settled, with Workmen's paying $2.5 million and

---

[1] Liberty Mutual requests that the Court take judicial notice of (1) several court documents filed in the present action; (2) the verified complaint for damages filed in *Workmen's Auto Insurance Company v. American Claims Management, Inc.*, Case No. BC427388 (Cal. Super. Ct. Dec. 4, 2009); and (3) several court documents filed in *Workmen's Auto Insurance Company v. American Claims Management, Inc.*, Case No. 37-2010-00092822-CU-BC-STL (Cal. Super. Ct.). The Court **GRANTS** these requests for judicial notice. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005); *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein.").

1  Indian Harbor paying $5 million under the Primary 2008-2009 Policy. Workmen's, however, refused
2  to release ACM or Indian Harbor from liability for the E&O Claim. ACM paid Indian Harbor $75,000
3  in satisfaction of its deductible obligation under the Primary 2008-2009 Policy for Workmen's claim.
4        On December 23, 2009 and again on January 14, 2010, Indian Harbor denied ACM defense
5  coverage for the E&O Action. Liberty Mutual agreed to defend ACM in the E&O Action under the
6  Excess 2008-2009 Policy. Liberty Mutual, however, reserved its right to recover any payments it made
7  on the basis that the primary coverage for the E&O Action had not been exhausted.
8        Plaintiffs commenced the present action on March 28, 2011. The First Amended Complaint
9  (the operative complaint) asserts two claims: (1) declaratory relief against both Indian Harbor and
10 ACM, and (2) equitable subrogation against Indian Harbor.
11       Presently before the Court is Liberty Mutual's Motion for Partial Summary Judgment (Docket
12 No. 32) and Indian Harbor's Motion for Partial Summary Judgment (Docket No. 34). Being fully
13 briefed, the Court finds the Motions suitable for determination on the papers without oral argument,
14 pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

16       Summary judgment must be granted where the record shows "there is no genuine dispute as
17 to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);
18 *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the
19 court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*
20 *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In the insurance context, summary judgment can often
21 resolve whether the insurer must defend" because "the question of whether a duty exists under certain
22 circumstances is generally a question of law." *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d
23 1112, 1122 (N.D. Cal. 2007) (internal quotation marks and alteration omitted).
24       Presently before the Court is both Liberty Mutual's Motion for Partial Summary Judgment and
25 Indian Harbor's Motion for Partial Summary Judgment. Both Motions seek summary judgment on
26 Plaintiff's First Claim for Declaratory Relief. Because many of the parties' arguments in these
27 Motions are identical, these Motions will be considered together.
28       In the First Claim, Plaintiffs seek a judicial determination:

      (a) That Indian Harbor is obligated to defend ACM in the E&O Action and/or pay 'claims expenses' in connection with the E&O Action under the [Primary] Run-Off Policy and/or the [Primary] 2008-2009 Policy;
      (b) That Liberty Mutual has no duty to defend ACM in the E&O Action or pay 'claims expenses' in connection with the E&O Action, unless and until the limits of both the [Primary] Run-Off Policy and the [Primary] 2008-2009 Policy are properly exhausted;
      (c) That Liberty Surplus has no duty to defend ACM in the E&O Action or pay 'claims expenses' in connection with the E&O Action, unless and until the limits of both the [Primary] Run-off Policy and the [Primary] 2008-2009 Policy, including deductibles, are properly exhausted.

(First Am. Compl. ¶ 70.)

Liberty Mutual argues that Indian Harbor owes ACM a duty to defend under both the Primary Run-Off Policy and the Primary 2008-2009 Policy, and Liberty Mutual therefore has no duty to defend ACM until both the Primary Run-Off Policy and the Primary 2008-2009 Policy are exhausted. Indian Harbor argues that: (1) it has properly exhausted the Primary 2008-2009 Policy; (2) it has no obligation to defend ACM under the Primary Run-Off Policy; and, alternatively, (3) if the Court finds that both the Primary Run-Off Policy and the Primary 2008-2009 Policy are triggered, Liberty Mutual's Excess 2008-2009 Policy drops down and is required to provide a defense to the E&O Action. The Court will consider whether Indian Harbor has properly exhausted the Primary 2008-2009 Policy and whether Liberty Mutual's Excess 2008-2009 Policy drops down and is required to provide a defense to the E&O Action. As these issues are dispositive, the remaining arguments will not be addressed.

    **I.**    **EXHAUSTION OF THE PRIMARY 2008-2009 POLICY**

Indian Harbor argues that the Primary 2008-2009 Policy was properly exhausted by the $5 million policy limits paid by Indian Harbor in settlement of the Youngblood Claim. Liberty Mutual argues that the Primary 2008-2009 Policy's "limits of liability" is $5 million plus the deductible of $75,000, so an additional $75,000 remains on the Primary 2008-2009 Policy limits.

In Section I.D., entitled "Exhaustion of Limits," the Primary 2008-2009 Policy states:

> The Company is not obligated to pay any damages or claims expenses or to defend or continue to defend any claim after the applicable limit of liability has been exhausted by the payment of damages or claim expenses or any combination thereof; or after the Company has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to the Named Insured or, if applicable, to the excess insurer(s) of the Named Insured.

(Pl. RFAG, Exh. 2, at LIU 01365-66.) In Section II.C., entitled "Deductible," the Primary 2008-2009 Policy states:

> The deductible amount shown in Item 5. in the Declarations is the Insured's obligation for each claim and applies to the payment of damages and claim expenses. The deductible will be paid by the Named Insured. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

(*Id.* at LIU 01366.) In addition, the Primary 2008-2009 Policy provides that Indian Harbor shall pay "all sums in excess of the deductible that the Insured becomes legally obligated to pay as damages and claim expenses . . . ." (*Id.* at LIU 01365.)

The deductible for first claims under the Primary 2008-2009 Policy is $75,000, and the deductible for subsequent claims is $50,000. (*Id.* at LIU01363.) In June 2009, Indian Harbor contributed $5 million to the settlement of the Youngblood Claim in partial satisfaction of the Workmen's claim against ACM. ACM paid Indian Harbor its deductible of $75,000. According to the language of the Primary 2008-2009 Policy, whether ACM paid its $75,000 deductible is not indicative of whether the Primary 2008-2009 Policy was properly exhausted by Indian Harbor. Because Indian Harbor contributed $5 million to the settlement of the Youngblood Claim, the Primary 2008-2009 Policy has been exhausted.

## II. LIBERTY MUTUAL'S OBLIGATION TO DEFEND UNDER THE EXCESS 2008-2009 POLICY

Liberty Mutual argues that because both the Primary Run-Off Policy and the Primary 2008-2009 Policy are triggered by the Youngblood Claim and E&O Action, Liberty Mutual does not have an obligation to provide a defense to ACM until both policies are exhausted (horizontal exhaustion). Indian Harbor argues that even if the Court finds that both the Primary Run-Off Policy and Primary 2008-2009 Policy are triggered, Liberty Mutual's Excess 2008-2009 Policy drops down and is required to provide a defense to the E&O Action (vertical exhaustion).

"'Vertical exhaustion' means that the policy limits under just one particular primary policy must be exhausted before the excess policy kicks in. By contrast, 'horizontal exhaustion' means that the limits under all applicable primary policies must be exhausted before the excess policy kicks in." *State v. Cont'l Ins. Co.*, 88 Cal. Rptr. 3d 288, 306 (4th Dist. 2009). Vertical exhaustion applies where "coverage attaches under an excess policy when the limits of a specifically scheduled underlying policy is exhausted and the language of the excess policy provides that it shall be excess only to that specific underlying policy." *Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339-40 (2d

Dist. 1996); *see also Cont'l Ins. Co.*, 88 Cal. Rptr. 3d at 306 ("As a general rule, California requires horizontal exhaustion. Vertical exhaustion applies if, and only if, the excess policy provides that it is excess to a *specified* primary policy. This is true even when the primary policies apply to different policy periods." (citations omitted)).

Here, the Excess 2008-2009 Policy's Limit of Liability Provision states:

> 3.   Limit of Liability:
> The Insurer will pay all of loss in excess of both the Underlying Limit of Liability plus the applicable retention or deductible under the Primary Policy, up to the Limit of Liability stated in Item 3 of the Declarations. The Insurer's maximum liability under this Policy for loss shall be the amount shown in Item 3 of the Declarations. In the event the Limit of Liability stated in Item 3 of the Declarations is exhausted by payment of loss, any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished.

(Pl. RFAG, Exh. 4, at 91.) The Excess 2008-2009 Policy further states: "this Policy only provides coverage when the Underlying Limit of Liability is exhausted by reason of the insurers of the Underlying Policies paying or being held liable to pay legal currency the full amount of the Underlying Limit of Liability as loss." (*Id.*) The Excess 2008-2009 Policy defines "Underlying Limit of Liability" as "the combined limits of liability of the Underlying Policies, less any reduction or exhaustion of the limits of liability due to payment of loss under those policies." (*Id.*) "Underlying Policies" means "the policies identified in Items 4.(A) and 4.(B) of the Declarations." (*Id.*) The only policy listed is the Primary 2008-2009 Policy. (*Id.* at 88.)

The Excess 2008-2009 Policy further states:

> 5.   Reduction or Exhaustion:
> In the event of reduction of the Underlying Limits of Liability by reason of payment of loss, this Policy shall pay excess of the reduced limits. In the event of exhaustion of the Underlying Policies, this Policy shall continue in force as primary insurance; provided, however, this Policy shall only pay excess of the retention or deductible applicable to the Primary Policy, which shall be applied to any subsequent loss in the same manner as specified in the Primary Policy.

(*Id.* at 92.) The Excess 2008-2009 Policy defines "Primary Policy" as "the policy identified in Item 4.(A) of the Declarations." (*Id.* at 91.) Item 4.(A) of the Declarations lists only the Primary 2008-2009 Policy. (*Id.* at 88.) Accordingly, the Excess 2008-2009 Policy is specifically excess to the Primary 2008-2009 Policy, and vertical exhaustion is proper. *See Flintkote Co. v. Gen. Accident Assurance Co.*, No. C 04-01827 MHP, 2008 WL 2477420, at *18 (N.D. Cal. June 18, 2008) (finding the "plain meaning of these provisions implies that this is a specific excess policy that requires exhaustion only

of the policies listed in the Schedule," when the underlying limit of liability was defined as "amounts of the applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies less the amount").

First, Liberty Mutual argues that it does not have an obligation to defend under the Excess 2008-2009 Policy because Indian Harbor has not established that it exhausted its Primary 2008-2009 Policy. As discussed above, however, the Court has found that Indian Harbor has exhausted its Primary 2008-2009 Policy.

Second, Liberty Mutual argues that under California law, "[l]iability under an excess policy attaches only after all primary coverage has been exhausted." (Pl. Opp. [Docket No. 37], at 22 (quoting *Hartford Accident & Indem. Co. v. Super. Ct.*, 23 Cal. App. 4th 1774, 1779 (1st Dist. 1994)).) In addition, Liberty Mutual argues that Indian Harbor is judicially estopped from arguing that the Excess 2008-2009 Policy is primary to the Primary Run-Off Policy because the Court has already found that "[t]here is no dispute between the parties . . . that Liberty Mutual is the excess insurer for ACM, while Indian Harbor is the primary insurer for ACM." (July 18, 2011 Order [Docket No. 18], at 11.) Liberty Mutual's argument, however, misses the point. Whether vertical exhaustion applies here turns on whether the Excess 2008-2009 Policy is a general excess policy or a specified excess policy. As explained above, the Excess 2008-2009 Policy is specifically excess to the Primary 2008-2009 Policy, and vertical exhaustion is therefore proper.

## CONCLUSION

For the reasons set forth above, Liberty Mutual's Motion for Partial Summary Judgment is **DENIED** and Indian Harbor's Motion for Partial Summary Judgment is **GRANTED**. Indian Harbor is granted summary judgment on the First Claim for Declaratory Relief.

**IT IS SO ORDERED.**

DATED: February 27, 2012

HON. ROGER T. BENITEZ
United States District Court Judge